W. JACK SMITH, APPELLEE, v. HAROLD ELY ET AL., APPELLEES, IMPLEADED WITH HELEN M. SCHROEDER, APPELLANT.

83 N. W. 2d 55

Filed May 17, 1957. No. 34162.

*A. G. Abbott,* for appellant.

*Wellensiek & Weaver, E. Merle McDermott,* and *James I. Shamberg,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Hall County. It involves the foreclosure of mortgages on an unimproved 14-acre tract of land located in Hall County. The trial court, on September 28, 1956, rendered a decree of foreclosure therein wherein it awarded to Helen M. Schroeder, a defendant and cross-petitioner, a first lien on these premises in the sum of $5,252.39 with interest thereon at 6 percent from date thereof; to W. Jack Smith, plaintiff, a second lien thereon in the sum of $3,428.60 with interest thereon at 9 percent from date thereof; and to Helen M. Schroeder a third lien in the sum of $19,558 with interest thereon at 6 percent from December 4, 1954. Helen M. Schroeder filed a motion for new trial and, from the overruling thereof, has perfected this appeal.

Appellant contends the mortgage on which appellee W. Jack Smith depends as a basis for his second lien was given to him by Harold and Faye Ely for the purpose of hindering, delaying, and defrauding her as a creditor of the Elys by preventing her from collecting the debts which the Elys then owed her, which are now in the form of a judgment, out of any equity the Elys might have in this 14-acre tract above her first mortgage. In view thereof it is her contention that Smith's lien should be placed third and her judgment lien of $19,558 second. This being an equitable action we shall consider the record accordingly.

We said in Butke v. Nachschoen, 133 Neb. 366, 275 N. W. 318, quoting from 27 C. J., Fraudulent Conveyances, § 11, p. 415, that: "'A conveyance is declared to be fraudulent when its object or effect is to defraud another, or the intent with which it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer.'" See, also, Farmers State Bank

of Ewing v. Dierks, 137 Neb. 442, 289 N. W. 860; Van Steenberg v. Nelson, 147 Neb. 88, 22 N. W. 2d 414.

And in Brown v. Sloan, 61 Neb. 237, 85 N. W. 37, we said: "Where a vendor sells and transfers his property with the intent and purpose of hindering, delaying, or defrauding his creditors, and the vendee purchases such property with knowledge of the fraudulent intent of the vendor, or knowledge of such facts and circumstances as would put a prudent man on inquiry, which, if pursued, would lead to a knowledge or notice of the fraudulent purpose of the vendor,` such sale and transfer is fraudulent and void as to the creditors of such vendor."

Harold and Faye Ely, husband and wife, whom we shall hereinafter refer to as the Elys, came to Hall County, Nebraska, in 1942. In December 1944 they purchased an improved 18-acre tract south of Grand Island in Hall County. It was located on South Locust Street at the intersection of U. S. Highways Nos. 34 and 281. The Elys immediately moved onto this property and made it their home. See Schroeder v. Ely, 161 Neb. 262, 73 N. W. 2d 172. In July 1947 appellant agreed to loan the Elys sufficient money to construct and equip a motel on this 18-acre tract on condition that she could have a home with the Elys, as one of the family, for the balance of her life, the Elys agreeing to repay the money but not interest thereon. The construction of the motel was completed in 1949. See Schroeder v. Ely, 161 Neb. 252, 73 N. W. 2d 165.

In July 1950 the Elys bought an unimproved 14-acre tract in the immediate vicinity of the 18-acre tract on which to erect a sign for the motel they had built and to keep out competitors as the site purchased was a desirable location for a motel. The Elys paid $7,000 for this tract, all of which was furnished by appellant. To secure this advance the Elys gave appellant a first mortgage thereon for the full amount, payable $50 per month beginning August 15, 1950.

In July 1953 appellant was no longer able to stay with

the Elys because of Faye Ely's conduct. See Schroeder v. Ely, 161 Neb. 252, 73 N. W. 2d 165. She thereupon, on September 10, 1953, brought a suit to recover the money she had advanced to the Elys to construct and equip the motel on the 18-acre tract, being case No. 12464 in the district court for Hall County. At the same time she brought an action to foreclose the $7,000 mortgage on the 14-acre tract and to reform the mortgage given to secure it as it only described a tract of 11.9 acres, being case No. 12463 in the district court for Hall County. A lis pendens for each case was recorded in the office of the register of deeds of Hall County, the notice in each case relating only to the tract therein involved. A settlement of their difficulties was thereafter made by Harold Ely and appellant on September 17, 1953. This settlement was subsequently set aside. See Schroeder v. Ely, 161 Neb. 252, 73 N. W. 2d 165.

On October 10, 1953, Harold Ely, pursuant to an agreement he had with her, paid appellant, through her attorney, the sum of $3,010.28 on the $7,000 first mortgage on the 14-acre tract, being $1,900 of delinquent monthly payments of $50 each and $1,110.28 of interest then due. This left an unpaid balance of $5,100. Appellant, pursuant to the agreement, took a new note for this amount, payable $50 a month commencing October 15, 1953, and a first mortgage on the 14-acre tract as security therefor. She then had the court dismiss the foreclosure action and caused both the $7,000 mortgage and lis pendens to be released. The $5,100 first mortgage is the indebtedness owing her by the Elys for which she has been given a first lien herein.

In order to pay appellant these past-due amounts on the first mortgage of $7,000 the Elys borrowed from their friend appellee W. Jack Smith, whom we shall hereinafter refer to as Smith, the sum of $2,800, using that amount and $210.28 of their own funds to make the payment to appellant already referred to. When Smith made the loan he knew what the money was to be

used for by the Elys and the Elys had agreed to give him a second mortgage on this 14-acre tract as security therefor, subject only to the unpaid balance of appellant's mortgage in the sum of $5,100. The Elys gave Smith their promissory note in the sum of $2,800, dated October 10, 1953, and due 1 year after date with interest at 5 percent until due and 9 percent thereafter, to evidence their indebtedness to him and, as security therefor, the second mortgage already referred to. This is the indebtedness of the Elys for which Smith was given a second lien in this action.

In case No. 12464, which was the action brought by appellant to recover the funds she had advanced to the Elys to build the motel, appellant recovered a judgment on June 25, 1954, in the sum of $56,055 and was given a lien therefor on the motel property, together with all furnishings and fixtures therein and equipment and chattels used in connection therewith. After the foregoing property had been sold in order to satisfy her judgment there was still owing appellant thereon a balance of $19,558 and interest for which amount she has been given a third lien.

We have carefully examined the evidence as it relates to the loan from Smith to the Elys. It conclusively establishes that Smith actually loaned the Elys $2,800 of his own funds so that the Elys could pay appellant the past-due principal and interest on her first loan on the 14 acres herein involved and that the Elys actually used the money loaned them by the Smiths for that purpose. It is significant that Smith took a second mortgage for the amount of his loan and not a deed to the property since he testified the 14-acre tract was very valuable as a potential motel site and worth as much or more than both mortgage liens then against it. We conclude the transaction was bona fide. As a result thereof appellant received not only the full amount of the loan but, in addition, the sum of $210.28, being money furnished by the Elys. The question of fraudulent in-

tent is a question of fact. See, Hilton v. Clements, 137 Neb. 791, 291 N. W. 483; Farmers State Bank of Ewing v. Dierks, *supra;* Becker v. Linton, 80 Neb. 655, 114 N. W. 928, 127 Am. S. R. 795. As stated in Becker v. Linton, *supra:* "The intent may be gathered from the acts of the parties, and a conveyance becomes fraudulent in law when it is shown that it was made for the purpose of placing the property beyond the reach of creditors, or that it would hinder or delay them in collecting their just demands." Under the factual situation hereinbefore set out it is difficult to see just how appellant can claim the loan was made with the intent and purpose of hindering and delaying her in the collection of what the Elys were owing her at that time or just how it could have the effect of defrauding her. Certainly she was in as good or better position as a creditor of the Elys after she had been paid all the proceeds of the loan as she was before.

Appellant contends the record is so full of suspicious circumstances, often referred to as badges of fraud, that they raise a presumption of fraud sufficient to entitle her to recover. Among them are the fact that the Elys were in financial difficulties, as is evidenced by the two suits which appellant had instituted and were then pending against them, and the fact that Smith made this loan as a friend at a time when he had substantial debts against properties he then owned and was operating. He paid off the latter in 1955 when he sold the properties, which were motels. But inferences or presumptions arising from such suspicious circumstances are subject to being contradicted and may be overcome by evidence which establishes the bona fides of the transaction. That is the situation here.

We think the evidence adduced fully supports the decree rendered by the trial court. We therefore affirm its judgment.

AFFIRMED.